## Wytheville

### RATCLIFFE V. COSTELLO.

#### June 10, 1915.

1. BILLS AND NOTES—*Holder in Due Course—Transfer—Reacquisition After Notice.*—If a holder, in due course, of a negotiable instrument transfers the same with a guaranty of its payment and subsequently reacquires it in order to protect his guaranty, but under circumstances which would have imputed to him knowledge of infirmities in the instrument, that knowledge does not relate back so as to impair his original position as a purchaser for value and without notice.

Error to a judgment of the Circuit Court of Loudoun county in an action of debt. Judgment for the defendants. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*R. A. Hutchinson* and *C. A. Sinclair,* for the plaintiff in error.

*John W. Rust,* for the defendants in error.

KEITH, P., delivered the opinion of the court.

The plaintiff, to maintain the issue on his part, introduced in evidence three notes sued upon, all of which are of like tenor, and that first falling due is as follows:

"Fairfax, Va., Jan. 20th, 1912. 466.67/100.
Eighteen months after date, for value received, we jointly and severally promise to pay W. B. Bullock, or order,

Four Hundred and Sixty-six 67/100 Dollars with interest at the rate of six *per cent. per annum,* from date payable annually.   It is stipulated and agreed that if any payment or part payment thereon, or any interest that may become due and unpaid, the holder thereof may at his option, declare that such delinquency shall cause the whole note to become due and collectible.   And we, maker and endorser, hereby waive the benefit of the homestead exemption as to this contract.   Payable at Peoples Nat'l Bank of Leesburg, Va.                            ROBERT COSTELLO,
                                      I. S. YOUNG."

This note was protested for nonpayment.   The plaintiff then took the stand in his own behalf and proved that he had bought these notes from the payee, W. B. Bullock; that he was familiar with Bullock's handwriting and that it was his endorsement on the back of the notes; that the notes aggregated $1,400, and he had paid Bullock for them the sum of $1,112.28; that he had purchased them before maturity and without notice or knowledge of any kind or degree as to what the notes were given for, as to any infirmity with respect to them, or any condition affecting their payment; that he had sold the notes to his father, G. M. Ratcliffe, and H. M. Daniel immediately after he had purchased them; that he was not the agent for either G. M. Ratcliffe or Daniel for the purchase of the notes, but that he had purchased them outright from the payee, Bullock, and paid for the same; that he had guaranteed to his vendees, Ratcliffe and Daniel, the payment of the three notes, and when the first note was protested he wrote several letters to the defendant, Costello, demanding payment, but received no reply; that when it was apparent that suit would be necessary to enforce payment, he took back the three notes, the first note having been previously protested, and that he had not paid his vendees the price of the same,

but was still owing to them the price of the notes; that he did not endorse the notes when he transferred them to Daniel and Ratcliffe; that before making the purchase he had inquired of the Peoples National Bank of Leesburg as to the financial responsibility of Robert Costello and I. S. Young, and upon receiving a favorable report he purchased the notes, with no notice whatever of any defect in the title of Bullock, or of any guarantee or of the circumstances under which the notes were executed and delivered; and that the witness did not know of other checks of Bullock being protested at his bank subsequent to May, 1912; that he did know at the time that Bullock was in the horse business, but he did not know for what the notes were given.

The defendants then introduced testimony which proves or tends to prove that the notes were for the purchase price of a stallion; that at the time of the sale Bullock entered into a verbal contract with Young to the effect that if Young was not prepared to meet his notes at maturity Bullock would extend the time and permit Young to renew such note or notes as long as Young might desire or find necessary, and that in fact the profits and proceeds from the service or use of the stallion would pay off and discharge the notes, and that as a part of the verbal agreement one of the conditions on which the stallion was sold was a guarantee that sixty *per cent.* of the mares regularly bred to the stallion would become with foal; that the horse did not come up to the guarantee, but was worthless as a foal-getter.

A number of witnesses were introduced, and we may sum up the result of their evidence by saying that it may be conceded that, if the suit had been between the original parties to the note, Bullock, the payee, and Costello and Young, makers, it would have been sufficient to have established the contention of the defendants. But the suit is

not between the original parties to the note. The plaintiff, Ratcliffe, occupies the position of purchaser of a negotiable note before maturity, for valuable consideration and without notice of any defect or infirmity with respect to it.

By section 52 of the negotiable instruments act, a holder in due course is one who takes the instrument under the following conditions: "(1) That it is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) That he took it in good faith and for value; and (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

By section 57 it is provided: "A holder in due course holds the instrument free from any defect of title of prior parties and free from defences available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

And by section 56 it is provided, that "To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same the person to whom it is negotiated must have had actual knowledge of the infirmity or defect or knowledge of such facts that his action in taking the instrument amounted to bad faith."

We have searched the record in this case diligently and have been unable to find a scintilla of evidence proving or tending to prove that Ratcliffe had actual knowledge of any infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith, but, on the contrary, he stood before the court, by evidence wholly uncontradicted, as a holder in due course of an instrument complete upon its face, which had not been dishonored, and that he took it in good faith and for value,

without notice of any infirmity in the instrument or defect in the title of the person negotiating it.

There seems to have been some misapprehension with respect to the case of *Aragon Coffee Co.* v. *Rogers,* 105 Va. 51, 52 S. E. 843, 8 Ann. Cas. 623. It will be recalled that Ratcliffe, after he purchased the notes, sold them with a guarantee to his vendees that they should be paid, and that in order to keep faith with them he took the notes back after the first one was protested. It is true that when the notes came back to his possession they came under circumstances which would have imputed to him knowledge of the infirmities in the instruments, but that knowledge did not relate back so as to impair his original position as a purchaser for value and without notice. In the case of *Aragon Coffee Co.* exactly the converse of these facts existed. The original payee in that case was the party guilty of a gross fraud, as a result of which the negotiable note in that case was given. He endorsed it to an innocent holder and afterwards repurchased it; and the court held that if a payee sells a negotiable instrument to an innocent third party and then repurchases it, he does not thereby acquire a better title against the maker than he had in the first instance. We refer to that case and the authorities there cited as not at all in conflict with the position of the plaintiff in error in this case.

When the introduction of evidence was concluded the plaintiff asked for three instructions, of which the court gave two as requested, but amended the third, as we think improperly, because there is no evidence that the plaintiff was other than an innocent holder for value and without notice. All the instructions asked for by the defendants and given by the court are subject to the same objection—that they are wholly unsupported by evidence. The instructions given by the court of its own motion correctly

propound the law, but so much of the fourth instruction as tells the jury that if they believe that the plaintiff did not purchase said notes and is not a holder in due course as defined, and further believe that the defendants gave said notes as purchase money for a horse bought under a guaranty and said horse did not fulfil the said guaranty, then they shall find for the defendants, and that these questions are to be determined from all the facts and circumstances introduced in evidence, should not have been given, for the reason already stated that there is no evidence which tends to prove that the plaintiff had notice of any infirmity in the notes at the time at which he purchased them.

The judgment of the circuit court must be reversed, the verdict set aside, and the cause remanded for a new trial to be had not in conflict with the views herein expressed.

*Reversed.*